**TRAVELERS INS. CO. v. CALDWELL.**
No. 12399.

Circuit Court of Appeals, Eighth Circuit.
Feb. 15, 1943.

Rehearing Denied March 15, 1943.

650

Joseph M. Hill, of Ft. Smith, Ark. (Henry L. Fitzhugh and John Brizzolara, both of Ft. Smith, Ark., on the brief), for appellant.

Hugh M. Bland and Thomas B. Pryor, Jr., both of Ft. Smith, Ark. (Thomas B. Pryor and G. Byron Dobbs, both of Ft. Smith, Ark., on the brief), for appellee.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

At the time of the occurrence out of which this litigation arises, three individuals controlled and operated two Arkansas corporations for which they maintained a common office in the city of Fort Smith, Arkansas. One of the corporations, the Black and White Transfer Company, was engaged as a common carrier of freight under a license issued by the Arkansas Corporation Commission. The other, the Drivers-Owners Association, operated taxicabs in the city of Fort Smith under a license from the city. The taxicabs were known as Black and White cabs. The two corporations had separate telephones, but their switchboards were connected so that one operator might receive calls for both corporations.

On October 3, 1938, the appellee, Clarence Caldwell, was struck and severely injured by a Black and White cab driven by one Monty Robinson, a driver for the Drivers-Owners Association. The record discloses that on the evening preceding the morning of the accident, a call had been received at the common office of the corporations, requesting that a pick-up truck or a taxicab be sent the next morning to convey a plumber from his residence in the city of Fort Smith to a point in the city at which his employer desired his services. No record of this call was kept and the evidence does not reveal with certainty by

whom or to whom it was made, beyond the fact that it was received by an employee of the Black and White Transfer Company. The person receiving the call turned it over to Monty Robinson, who every morning regularly conveyed a passenger from a residence near that of the plumber to the post office in Fort Smith, this action being taken to avoid the necessity of dispatching a special conveyance for the plumber. Accordingly, on the morning in question, Monty Robinson called for his regular passenger, picked up the plumber and another passenger, and, after driving two of them to their destinations, was proceeding with the plumber to his destination when his cab struck and seriously injured the appellee Caldwell. There is evidence that the person making the call for transportation for the plumber had stated that the plumber and such tools as he had were to be taken to his place of employment, but neither Monty Robinson nor the other passengers saw any tools and the plumber testified that he had none.

Appellee Caldwell brought a suit in an Arkansas court against the Black and White Transfer Company, the Yellow Cab Transit Company, and the three individuals mentioned above to recover a judgment for the damages sustained by him as a result of the accident, alleging in his complaint that the corporate and individual defendants were engaged in a joint enterprise in operation of the taxicab which caused his injury. Judgment in his favor was awarded against all defendants. At the time of the suit in the state court, Drivers-Owners Association had been adjudicated a bankrupt and had gone out of business. The three individual defendants had organized the Yellow Cab Transit Company, apparently as a successor to the defunct corporation. The efforts of the appellee to collect the judgment from defendants in the suit in the state court having failed, he instituted the present suit in the federal court under the Declaratory Judgment Act, 28 U.S.C.A. § 400, asserting that the appellant insurance company was liable for the payment of the judgment under two policies of casualty insurance written by it, in which the Black and White Transfer Company was the assured. The district court, being of the opinion that the asserted liability was covered by the policies of insurance in question, so declared, and entered against the insurance company the judgment from which this appeal comes. The question for decision here is whether the court correctly decided the issue of appellant's liability on its contracts of insurance.

For convenience the policies of insurance will be referred to as the first policy and the second policy. Both policies were issued on the same date, covered the same term, insured the same motor vehicles, none of which were taxicabs, and in all material respects were alike, except that the amounts of insurance afforded were different, and except that to the first policy were attached numerous riders and endorsements not contained in the second.

By the law of Arkansas, common carriers by motor vehicle are under the supervision of the State Corporation Commission. Pope's Digest, Statutes of Arkansas, § 2023 et seq. No person or corporation is permitted to operate within the state as a common carrier by motor vehicle without first obtaining from the corporation commission a certificate or permit authorizing such operation. Among other things the applicant is required to state in its application for a license the kind of traffic, whether passenger or freight, in which the applicant intends to engage, the route over which it proposes to operate, the cities and towns which it proposes to serve, the termini of the route designated, the time schedule of its operation, and the fares or charges proposed to be made for the service to be rendered. The corporation commission may, after a hearing, grant or refuse a license certificate for the operation applied for. As a condition precedent to a license certificate the applicant is required to file with the corporation commission a policy of insurance in such sum as the commission may designate "for the protection of all persons, including passengers, and property resulting from the negligent operation of such motor vehicle carrier." Act No. 99, Acts of Arkansas (1927) as amended by Act No. 62, Acts of Arkansas (1929), Pope's Digest of the Statutes of Arkansas § 2025.

By the Act of 1927 all policies filed with the commission are required to have attached the following endorsement:

"The policy to which this endorsement is attached is written in pursuance of and is to be construed in accordance with, an Act of the General Assembly of the State of Arkansas for the year 1927. Entitled Act to provide for the regulation, supervision, and control of motor vehicles used in the transportation of persons, property, for

compensation, in the State of Arkansas, and for other purposes; and with the rules and regulations of the Railroad Commission of the State of Arkansas. Policies to be filed with the said Commission in accordance with said statute.

"In consideration of the premium stated in the policy to which this indorsement is attached, the Company hereby waives a description of the motor vehicles to be insured hereinunder, and agrees to pay any fine or judgment for personal injury including death resulting therefrom and, or damage to property, other than insurance, caused by any and all motor vehicles operated by the assured, pursuant to a certificate issued by the Railroad Commission of the State of Arkansas within the limit set forth in the schedule shown hereon, and further agrees that upon its failure to pay any such final judgment such judgment creditor may maintain an action in any court of competent jurisdiction to compel such payment. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof, by the assured, shall relieve the Company from liability hereunder or from the payment of any such judgment.

### Schedule

"On each motor vehicle used for the transportation of property not to exceed

"$5,000 for any recovery for personal injury by one person;

"$10,000 for all persons receiving personal injury by reason of one act of negligence; and not to exceed

"$1,000 for damage to property of any person other than the assured.
"On each motor vehicle used for the transportation of persons, having passenger capacity of 12 passengers or less, not to exceed

"$5,000 for any recovery for personal injury by one person;

"$10,000 for all persons receiving personal injury by reason of one act of negligence; and not to exceed

"$1,000 for damage to property of any person other than the assured.
"On each motor vehicle used for the transportation of persons, having a passenger capacity of 13 to 20 passengers, inclusive, not to exceed

"$5,000 for any recovery for personal injury by one person:

"$15,000 for all persons receiving personal injury by reason of one act of negligence; and not to exceed

"$1,000 for damage to property of any person other than the assured.
"On each motor vehicle used for the transportation of persons, having a passenger capacity of more than 20 passengers, not to exceed

"$5,000 for any recovery for personal injury by one person;

"$20,000 for all persons receiving personal injury by reason of one act of negligence; and not to exceed

"$1,000 for damage to property of any person other than the assured.

"The policy to which this endorsement is attached shall not expire nor shall cancellation take effect until after the (10) days notice in writing, by the Company, shall have first been given to the said Commission, said ten (10) days notice to commence to run from the date notice is actually received by the Commission.

"Attached to and forming a part of policy No. . . . . . issued by the . . . . . . Insurance Company to . . . . . . ."

It will be observed that, in the Act of 1927, the legislature had fixed the amount of insurance liability required as a condition precedent to the grant of a license under the Act. The amounts of insurance were those specified in that part of the endorsement quoted above, entitled "Schedule". A peculiarity of the Act to be noted is that the endorsement with the "Schedule" was required by the Act to be attached to all policies, regardless of whether they were filed in connection with a license for the transportation of freight or in connection with a license for the transportation of passengers.

By the amending act of 1929 the legislature changed the law by providing that the commission should fix the amount of insurance required. In conformity with this provision, the amending act omitted the schedule of liability quoted above. And the first part of the required endorsement was changed so as to provide that the policy should be construed in accordance with the act of the general assembly of the State of Arkansas for the year 1927, as amended. The retention in the policy endorsement required by the 1929 act of the so-called schedule of liability has reference to the amount of insurance required of the car-

rier by the corporation commission and not to the amounts of such liability as fixed by the amended act of 1927 and repealed by the later act.

The record discloses that the Black and White Transfer Company applied to the Arkansas Corporation Commission [1] for a license to operate as a common carrier of intrastate freight of special commodities consisting of household goods, used machinery and tools and store fixtures, over a prescribed route, and the application was granted as applied for, with the condition that the transportation of used machinery and tools was restricted to a radius of seventy-five miles from the city of Fort Smith. The appellant insurance company, in connection with the application, delivered to the corporation commission an instrument in writing, entitled a binder, which purported to insure the Black and White Transfer Company in the operation of two two-ton vans, one one-half ton tractor, and one semi-trailer against liability for personal injuries resulting to one person in the sum of $25,000, and resulting from one accident, in the sum of $50,000. This binder by its terms expired with the delivery to and filing by the commission of a formal policy of insurance. The effective date of the binder was April 5, 1938. It was filed with the corporation commission on April 7, 1938.

On April 28, 1938 the appellant insurance company filed with the corporation commission the first policy involved in this case, its effective date being April 5, 1938. The letter of the appellant company transmitting the policy to the commission contained a heading referring by their numbers to both the first and second policies, but only the first was transmitted and filed, and the evidence establishes the fact that no other policy was filed with the corporation commission and, so far as this record goes, none was required. To the first policy was attached the endorsement required by law, including that part of the endorsement required under the amended act of 1927, entitled "Schedule". Under the word "Schedule" appeared the words "Act No. 99, 1927." The policy insured the same vehicles mentioned in the binder, described the occupation of the insured as "furniture mover", and declared that the purpose for which the vehicles were to be used was "Commercial—Moving Household Goods and Office Furniture Only." It showed on its face that the extent of the liability insured against was $5,000 for each person and, subject to that limit, $10,000 for each accident, and $5,000 for property damage resulting from one accident, and that no premiums had been paid by the assured except for the liability stated. It was further provided in this policy, under the heading "Exclusions", that the insurance should not apply while any of the cars insured were used "as a public or livery conveyance or for carrying persons for a consideration."

There were other endorsements attached to the first policy, including one required by the Interstate Commerce Commission under the federal Motor Carrier Act for a license for the transportation of interstate freight, and one required by the State of Oklahoma for a license for the transportation of intrastate freight in that State. A further endorsement provided that the insurance should apply to automobiles not owned by the assured, but used in its business, in accordance with the provision of any applicable endorsement required by any federal or state law. The method of computing the premiums to be paid on account of such vehicles and the record of their use required to be kept by the assured were stated. And finally, there was a rider attached to the policy providing that as to any sum payable under the policy "only by reason of the provisions of any applicable endorsement required by any Federal or State Law or the rules of any Commission, Board or Bureau adopted under such law, the limits of the company's liability shall be as stated in such applicable endorsement."

The second policy had none of the riders or endorsements above set out attached to it. It did contain the same clause as the first policy, excluding liability on the policy in the event the cars insured, which as has been stated were the same as those described in the first policy, were used in the transportation of passengers for hire. The limits of liability assumed by the appellant insurance company were, however, $25,000 for an accident to one person and, subject to that limit, $50,000 for injuries resulting from one accident. It contained an

---

[1] The Acts of 1927 and 1929 refer to the Arkansas Railroad Commission, but by an act of the state legislature in force at the time of the occurrences involved in this action, the name of the commission had been changed to Arkansas Corporation Commission.

endorsement not in the first policy entitled "Excess Insurance Endorsement" as follows:

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability applies subject to the following provisions:

"1. If bodily injury occurs with respect to which insurance is afforded under Policy Number FA–1109020 (herein referred to as 'statutory policy') the insurance thereunder shall first be applied and the limits of liability thereunder shall first be fully exhausted before any of the limits of liability applicable under this policy shall apply.

"2. The limits of liability expressed in said statutory policy are included in the limits of liability applicable to this policy and are not in addition thereto.

"3. This policy may be cancelled as provided therein without effect upon said statutory policy but termination or cancelation of said statutory policy shall operate automatically and without notice to terminate and cancel this policy as of the same date said statutory policy is terminated or canceled."

■ Because the judgment in the state court was in excess of the insurance afforded by the first policy, liability under both policies is claimed by appellee. He vigorously contends that both the first and second policies were statutory policies, that is, required by the controlling statutes of Arkansas. We think the record in the case does not sustain this contention. Only the first policy was filed as required by law with the corporation commission. In the absence of any showing that the state law or the regulations of the commission required other or different insurance than that provided in the first policy, its acceptance for filing by the commission, which was charged by law with the duty of determining the form and sum of insurance required, and the granting of the license applied for, must be accepted as conclusive proof of the fact that the commission did accept the first policy as a full compliance with lawful requirements. And since the commission accepted the first policy for filing under the statute, we must assume that it did so in the knowledge that the insurance afforded by it was less than that provided in the binder which the policy superseded and that the decrease in the amount of the insurance had the approval of the commission. It is true, as appellee argues, that if both policies were in fact required by the commission, the absence of the required statutory endorsements from one of them would be of no importance because, if executed for the purpose of meeting the statutory requirements, the pertinent provisions of the statute became a part of the insurance contract, although not expressly written in the policies. This is but another way of saying that a so-called statutory policy must conform to the provisions of the statute under which it is executed and must fully meet the purpose which it is intended to fulfill. It does not mean that the insurer is required to write, or the insured to provide, a contract of insurance which the law does not require and which the parties to the insurance contract did not make nor intend to make. We resolve this contention against appellee.

■■ But if both policies were statutory policies, two provisions contained in them exclude the insurance coverage asserted in this case. The first of these is the statutory endorsement under which the insurance company became liable to pay any liability against the insured "caused by any and all motor vehicles operated by the assured pursuant to a certificate of the Corporation Commission of the State of Arkansas." There are no Arkansas decisions upon the point in question, but other authorities are uniform in holding that a statutory policy of the character involved here does not cover liability incurred by the assured in operations beyond the range of its authority under its license. This court has so held in two cases. Trinity Universal Insurance Company v. Cunningham, 8 Cir., 107 F.2d 857; Hawkeye Casualty Company v. Halferty, 8 Cir., 131 F.2d 294. In the cases mentioned the court had under consideration the Missouri statutory policy for motor vehicle carriers, in all essential matters the same as that under consideration here. In the Trinity Universal case the court pointed out that the power of the commission to require a common carrier by motor vehicle to purchase liability insurance, as a prerequisite to granting a license to operate as a common carrier, was limited to the operation over which the commission had jurisdiction, and that the phrase "pursuant to the certificate * * *" [107 F.2d 861] must be interpreted to exclude from the scope of the insurance coverage, vehicles and operations not under the commission's supervision. This case was followed in the Halferty case, where it was held that a truck of a common car-

rier, insured under a Missouri statutory policy, was not covered while it was not being operated pursuant to the license granted its owner as a common carrier, but in private or contract carriage. Smith v. Republic Underwriters, 152 Kan. 305, 103 P.2d 858, 860 was cited. There the Supreme Court of Kansas stated the underlying reasons for the rule under discussion in these words: "Having given consideration to the commercial operations provided for in the certificate or permit—and therein specifically set out—the company issues a policy covering vehicles engaged in such operations. It does not insure vehicles otherwise engaged—that is, which are being used for commercial, personal or social purposes outside the operations covered by the permit. Or, as the endorsement has it, the policy covers vehicles being operated 'pursuant to the permit.' * * * The certificate or permit simply authorizes certain transportation for hire which cannot otherwise be lawfully engaged in. Subject to some qualifications in the case of common carriers, the vehicle may also be lawfully used by the owner for any of the many other purposes for which no certificate or permit is required. Instances—in common knowledge—are so numerous as to require no illustration." Other cases containing this interpretation of the standard statutory endorsement are: Flythe v. Eastern Carolina Coach Co., 195 N.C. 777, 143 S.E. 865; Foster v. Commercial Standard Ins. Co., 10 Cir., 121 F.2d 117; Caines v. Wheeler, 207 Ky. 237, 268 S.W. 1098; Motor Car Indemnity Exchange v. Lilienthal, Tex.Civ.App., 229 S.W. 703.

▇ In the present case the car which caused the accident was a taxicab engaged in the transportation of passengers. The fact that one of the passengers may have had with him a small box containing the tools of his trade is not sufficient to convert the taxicab into a vehicle engaged in the transportation of freight pursuant to the license granted the Black and White Transfer Company. It is, therefore, unimportant in the decision of this case whether the taxicab which caused the accident, or all of the taxicabs operated by the Drivers-Owners Association or the Yellow Cab Transit Company, were operated by the Black and White Transfer Company. So far as this record goes, the Black and White Transfer Company may have been authorized under its charter to engage in the taxicab business or to use its trucks for

contract hauling. The evidence does show that on occasion the Black and White Transfer Company did undertake contract hauling in the vicinity of Fort Smith, Arkansas. Even so, the insurance in this case was not required of the transfer company for such operations, and did not purport to cover them. If it is true that the transfer company engaged in any or all of them, this fact cannot extend the coverage of the policies of insurance, limited by their terms to liability caused by the operations of the transfer company pursuant to the license as a common carrier of freight. Moreover, since the contracts of insurance which the law required of the insurance company, and which it wrote, covered only liability arising out of the operations of the transfer company as a common carrier of freight, the insurance company was within its rights in excluding liability as it did in this case, when any of the cars insured were used for the transportation of passengers for hire.

▇ The argument that the clause in the statutory endorsement, providing that nothing contained in the policy should relieve the insurer of liability thereunder, operated to change the terms of the policy prescribed by the statute so as to cover a motor vehicle not engaged in the authorized operations of the carrier, is without merit. This contention ignores the plain language of the statutory endorsement and the purpose of the statute. Under the endorsement the insurance company became liable to pay any liability of the insured caused by its operations pursuant to its license as a common carrier. The effect of the language that nothing in the policy should relieve the insurer from liability thereunder was to invalidate any attempt on the part of the insurance company to limit its statutory liability by contract. Its presence in the policy did not operate to extend the liability which the law imposed upon the insurer, but to prevent limitation of that liability. 7 Appleman, Insurance Law and Practice, § 4470; Foster v. Commercial Standard · Ins. Co., supra; Caines v. Wheeler, supra.

▇ Nor do we think that the inclusion in the first policy of the statutory schedule provided in the endorsement required by the Act of 1927 was effective to make the policy one for the coverage of liability to passengers. Read literally, the Act does require that the so-called "Schedule" be attached to each policy, whether is-

sued in connection with the transportation of freight or passengers. But when the Act is read in its entirety, it is clear that the legislative intent was not to require insurance, covering liability to passengers, of one licensed as a common carrier of freight. A contrary interpretation would lead to the absurd result that one forbidden by law to engage in the common carriage of passengers, and not so engaged, nevertheless, must be required by the State to carry insurance for the protection of passengers. Literally interpreted, the so-called schedule of liability in the 1927 act is in direct conflict with the legislative purpose as expressed in that Act, as well as in the Act of 1929, and is opposed to the words of the 1929 act providing that the amount of insurance carried should be fixed by the corporation commission. And since the policy was written after the effective date of the Act of 1929, the provisions of that Act are by law incorporated in the policy. Utilities Ins. Co. v. Potter, 188 Okl. 145, 105 P.2d 259. In view of the fact that the first policy expressly excluded liability to passengers from its coverage, that the license issued to the insured authorized it to engage only in the common carriage of freight, that, as a prerequisite to the issue of the license, no insurance against liability to passengers was required by law, as well as because the insured could not engage in the common carriage of passengers under the license issued it, the reference in this schedule to the limits of liability for certain passenger-carrying vehicles must be treated as surplusage.

■ There is nothing in the endorsements on the first policy, providing for the waiver of identification of vehicles insured and for the substitution by the insured of cars not described in the policy, which in any way conflicts with the opinion expressed above. Such provisions are common requirements of the statutory policies of the character under consideration here. The reason for them is that the common carrier by motor vehicle, in order to maintain without interruption the public service required of it, must be able to replace damaged vehicles or to place in service, without delay, sufficient vehicles to meet its obligation under its license. At the same time it must maintain in effect insurance coverage on all vehicles being operated pursuant to its license. The provisions of the statutory endorsements in question permit this to be done, but the statutory liability thus imposed upon the insurer does not extend to vehicles used by the carrier beyond the range of its license as a common carrier.

■ It is hardly necessary to add to what has been said that if the second policy was not a statutory policy it did not cover the liability asserted in this case. The coverage of the second policy was limited to four described trucks. There was no provision in the policy for the substitution or use of other cars, and the use of the described cars was limited to the transportation of freight. The insurance afforded by it could not be extended to cover liability arising out of the transportation of passengers in a taxicab not described in the policy. The excess insurance endorsement attached to this policy shows the understanding of the insured and insurer that it was not intended to cover the insured's statutory liability. No provision of Arkansas law has been called to our attention which prohibits one licensed to operate as a common carrier of freight from using the vehicles insured for that purpose in operations beyond the range of its authority as a common carrier, such as in contract operations when not conflicting with its license. And no reason appears why a corporation authorized to operate as a common carrier may not carry insurance for the specific purpose of protecting it against liability, when using its vehicles in operations not prohibited by law, outside of the range of its authority as a common carrier. The logical assumption under the evidence in this record is that the second policy was intended for such coverage.

Other arguments advanced by the parties in this case have been considered, but we find none of them necessary to a decision of the case. We conclude that the liability asserted against the insurer in this case was not covered by either of the policies involved.

The judgment of the district court is reversed.