## Hoar *v.* Gray (et al., Appellant).

Argued January 5, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

rear-gument refused June 29, 1945.

*Ward C. Henry,* with him *Elmer C. Pfeiffer* and *Swartz, Campbell & Henry,* for appellant.

*Samuel Lippincott Borton,* with him *Louis Matkoff,* for appellee.

OPINION BY MR. JUSTICE DREW, May 23, 1945:

Roy C. Hoar, plaintiff, was injured while riding as a passenger in a truck owned by Jack Gray, defendant, and operated by his servant. At the trial plaintiff recovered a verdict of $10,000, and, after entry of judgment, served an attachment sur judgment upon Manhattan Mutual Automobile Casualty Company, Inc., defendant's insurer, as garnishee. Interrogatories and answers were duly filed, and then plaintiff entered a rule for judgment against the garnishee for want of sufficient answers. After argument, the rule was made absolute and judgment entered against the garnishee for $5,000, the limit of its liability under the policy. This appeal by the garnishee followed.

The policy was in the usual form, but several riders or endorsements were attached: (1) a Passenger Endorsement expressly excluding liability for injury or death to "any person while in or upon, entering or alighting from, the insured automobile, irrespective of whether such person is carried as a passenger for a monetary consideration or as a guest without any implied charge"; and (2) a Public Utility Endorsement providing that "The policy to which this endorsement is attached is an automobile bodily injury liability and property damage liability policy, and is hereby amended to assure compliance by the insured, as a motor carrier of passengers or property, with the Public Utility Law,

effective June 1, 1937, and the pertinent rules and regulations of the Pennsylvania Public Utility Commission. In consideration of the premium stated in the policy to which this endorsement is attached, the Company hereby agrees to pay any final judgment recovered against the insured for bodily injury to or the death of any person or loss of or damage to property of others (excluding . . . employees), resulting from the negligent operation, maintenance, or use of motor vehicles *under certificate of public convenience or permit issued to the insured by the Pennsylvania Public Utility Commission,* or otherwise under the Public Utility Law, effective June 1, 1937, within the limits of liability hereinafter provided. . . . It is understood and agreed that upon failure of the Company to pay any such final judgment recovered against the insured, the judgment creditor may maintain an action in any court of competent jurisdiction against the Company to compel such payment. . . . The liability of the Company extends to such losses, damages, injuries, or deaths whether occurring on the route or in the territory authorized to be served by the insured or elsewhere." (Italics added). A correct interpretation of this Public Utility Endorsement will determine this case.

The following facts are not denied: (1) plaintiff was riding on the truck when injured; (2) the policy does not cover damages of a person injured while on the truck; (3) the policy was secured by defendant to comply with the Public Utility Law, and bore the endorsements required by the Public Service Commission pursuant to that law, and (4) the truck was not being used for the purpose defined in the certificate at the time of the accident.

The learned court below held that were the Passenger Endorsement the controlling provision "there would seem no doubt that the plaintiff could not succeed", but that since the Public Utility Endorsement is a part of the policy because of the requirements of law,

it superseded the Passenger Endorsement, and made the garnishee liable.

It is the contention of the garnishee, however, that the Public Utility Endorsement is inoperative in this case. It contends that the certificate of public convenience issued to the insured, Gray, authorized him to do "Hauling exclusively for Nicely Corporation (Refrigerators)". There has never been any question but that defendant's truck was being used at the time of the accident for the purpose of carrying coal. Certain it is, it was not hauling refrigerators for Nicely Corporation, the use to which the certificate of convenience was limited. And certain also it is that at the time of the accident the truck was carrying coal for Gray's personal use. Attached to the answers to the interrogatories is an exhibit which is not printed in the record before us, Exhibit C. It is a copy of the statement of William Sowers, stating that he was employed as a driver by defendant Gray and was driving the truck in question. He says, "I left Philadelphia on Wednesday evening at about 9 P. M. to go up to St. Clair, Pa., to pick up a load of coal for Mr. Gray for his own personal use in his own home." The accident occurred while he was returning with that load of coal. Since Gray was hauling coal for his own use, he was not doing so as a common carrier and did not require a certificate from the Commission and the garnishee's insurance, which covered hauling authorized by the commission certificate, did not cover the act. Subsection 6 of section 2 of the Public Utility Law, as amended by the Act of June 21, 1939, P. L. 636, specifically *excludes* as a "Common Carrier" anyone engaged in "(b) transportation of property by the owner to himself . . ." The fact having been established that Gray was hauling coal for his own use, the transaction was not covered in any view of the policy and the judgment must be reversed.

Defendant was certified as a common carrier for a specific purpose and it was for this only that he was

insured. No other logical construction can be placed on the policy, for if he had been certified to haul any and every type of merchandise, either for Nicely Corporation or anyone else, he would have had to obtain, under the rules of the Commission, insurance to cover such hauling. When defendant did hauling for himself he was completely outside the certificate of the Commission and the Public Utility Endorsement of the policy. In such position he was acting as an individual and not as a common carrier.

As regards compulsory insurance, the authority of the Public Utility Commission concerns only common carriers. A vehicle becomes a common carrier only when certified by the Commission and only for the purpose stated in such certification. A private individual operating his vehicle for his own use or pleasure cannot be forced to take insurance as dictated by the Commission. Anyone not operating under a certificate issued by the Commission is free to carry insurance or not—as he pleases. No liability insurance is required in Pennsylvania for vehicles used for private purposes, except as provided by the Act of May 15, 1933, P. L. 553, as amended (Uniform Automobile Liability Security Act), with which we are not here concerned. Thus it is clear that the Public Utility Endorsement applied only when the truck was being used as a common carrier.

While the Public Utility Endorsement provides for payment of "any final judgment recovered against the insured for bodily injury to or the death of any person", it specifically limits this liability to such injury or death "resulting from the negligent operation . . . under certificate of public convenience or permit issued to the insured by the Pennsylvania Public Utility Commission . . ."

So far as we know the question raised here has never been before an appellate court of this Commonwealth; but there are a number of decisions in sister jurisdictions, having laws governing public utility corporations

similar to our own, which are in harmony with the views here expressd.[1] In *Hawkeye Casualty Co. v. Halferty,* 131 F. 2d 294, 299, under quite similar facts as here presented, the court said: "Since the truck involved in the accident under consideration was not engaged at the time of the accident as a common carrier of freight under the appellees' certificate of public convenience and necessity, the endorsement of the Missouri Public Service Commission, limited to such operations, has no application in this case. The situation in all respects is as if the appellees were not engaged as common carriers, and as if no such endorsement was contained in the policy." In *American Casualty Co. of Reading, Pa. v. Morris,* 51 F. Supp. 889, 894, on analogous facts, the court said: "Since the truck was being used for a purpose which did not require a permit, it was not being operated under such a permit or the Motor Carrier Law, . . . The effect of this is to leave the parties in the same position they would be had the truck never been used as a motor carrier. As such they had the right to, and did, enter into their own private contract of insurance. In the contract agreed upon was the endorsement excluding coverage to any person 'while in or upon, entering or alighting from the automobile.' "

We conclude, therefore, that since the truck in question was not being used at the time of the accident under or pursuant to the certificate or permit issued to defendant by the Public Utility Commission, the garnishee is not liable under the Public Utility Endorsement of the policy; and that since plaintiff was a passenger at the time he received his injuries he cannot recover against

---

[1] *Smith v. Republic Underwriters,* 152 Kan. 305, 103 P. 2d 858; *Flythe v. Eastern Carolina Coach Co.,* 195 N. C. 777; *Foster v. Commercial Standard Ins. Co.,* 121 F. 2d 117; *Caines v. Wheeler,* 207 Ky. 237, 268 SW 1098; *Motor Car Indemnity Exchange v. Lilienthal,* Tex. Civ. Appeal, 229 SW 703; *Basta v. United States Fidelity & Guaranty Co.,* 107 Conn. 446, 140 A. 816; *Travelers Insurance Co. v. Caldwell,* 133 F. 2d 649.

the garnishee because of the specific exemption in the Passenger Endorsement.

Judgment reversed, and here entered for the garnishee. Costs to be paid by appellee.

----

DISSENTING OPINION BY MR. JUSTICE JONES:

It is undisputed that the insured truck, upon which the plaintiff was riding at the time of his injury, was not then engaged in the performance of the service for which the truck owner held a certificate of public convenience. As the majority opinion states, it was being used for hauling cargo for the owner's own personal use. Nor do I assert that the construction placed by this Court on the insuring clause in the "Public Utility" rider is not an admissible interpretation. It is apparent, however, that it operates in limitation of the liability of the insurer. In short, whether the truck was or was not insured against loss for injury to one riding thereon depends upon the character of the service the truck was performing at the time of the injury.

On the other hand, I submit that it is no less reasonable to conclude that the clause, viz., "under certificate of public convenience or permit issued to the insured by the Pennsylvania Public Utility Commission", was merely to identify or describe *the* particular "motor vehicles" of the insured, which the rider was intended to insure against loss to others "resulting from *the negligent operation, maintenance, or use* . . ." of the vehicles; and that, consequently, the insurance on the truck because of the "Public Utility" rider was in force whether or not the truck, at the time of its negligent infliction of loss, was being operated in the insured's authorized public service. (Emphasis supplied.)

Such being the case, I think we should adopt the latter construction in obedience to the well-known rule of construction that, where a contract of insurance is ambiguous or reasonably susceptible of two inconsistent interpretations, the contract is to be construed most

strongly against the insurer and in favor of the insured: *Hagerty v. William Akers, Jr., Co., Inc.*, 342 Pa. 236, 239, 20 A. 2d 317; *Sidebotham v. Metropolitan Life Insurance Company*, 339 Pa. 124, 127-128, 14 A. 2d 131.

I should, therefore, affirm the judgment of the learned court below.