Luz Raquel Arvelo, Etc., Plaintiff and Appellee, *v.* Francisco Rodríguez Cuevas, Defendant and Appellant; Hartford Accident and Indemnity Co., Intervener and Appellant.

No. 9745. Argued June 2, 1948.—Decided July 16, 1948.

150

Ramón Ferrer Delgado for defendant-appellant. R. Rodríguez
   Lebrón for intervener-appellant. Luis Mercader for appel-
   lee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

Luz Raquel Arvelo, represented by her natural mother, Josefina Arvelo, brought an action for damages against Francisco Rodríguez Cuevas. She alleged therein that on August 17, 1946, at about 7:00 p. m. she was on the left-hand side of the highway leading from Quebradillas to Camuy; that at that time the defendant operated a Ford automobile at great speed and that he negligently swerved the car to its left striking her and causing her injuries on the head and in other parts of her body.

The Hartford Accident & Indemnity Co. requested leave to intervene which was granted. At this stage, the case went to trial and after hearing numerous witnesses of both sides, the lower court sustained the complaint and adjudged the defendant to pay to the plaintiff the sum of $800, together with costs, and $100 as attorney's fees. It further stated in its judgment, that the intervener was also liable for the amount of said judgment, by virtue of the policy which insured the defendant against accidents of that nature. From this judgment only the Hartford Accident and Indemnity Co. has appealed and in its brief contends that the lower court erred in overruling the special defenses raised by it and in not excusing it from liability. Said defenses were to the effect that the accident was not covered by the insurance contract because the vehicle was not engaged in the

transportation of passengers for pay at the time the accident occurred and because said vehicle was not being operated over the route authorized by the Public Service Commission. ,

The evidence showed that the vehicle in question—a beach-wagon of the type known as *'cariocas'*—belonged to Francisco Rodríguez Vega, father of the defendant Francisco Rodríguez Cuevas, and was insured in the name of the former. (The intervener admits that the fact that the vehicle was not being operated by its owner at the time of the accident does not excuse him from liability.) The evidence also showed that on the afternoon of the above-mentioned day, Francisco Rodríguez Cuevas, with the consent and acquiescence of his father, went with several guests to the Calero, suburb of Aguadilla, where he was married, and that upon returning to Camuy and at about 7 or 7:30 p. m. the accident occurred. Although several witnesses testified that when the accident occurred Rodríguez Cuevas transported, besides his guests, several passengers for pay, the lower court did not believe those witnesses and concluded that only the guests of the defendant were traveling in the vehicle. As to whether or not the vehicle traveled on the route assigned to it by the Public Service Commission, the evidence showed that at that time there were no fixed routes and that the public cars could travel freely in any direction. Therefore, the only question in controversy is whether the insurance policy issued by the intervener covered the damages caused to a third person when an insured vehicle was not transporting passengers for pay at the time of the accident.

In accordance with § 9 of Act No. 279 of April 5, 1946 (Sess. Laws, pp. 598, 622), the public-service automobiles of seven passengers or less shall pay $50 and those of eight to ten passengers, $60 as annual fees. Section 10 (*a*) of that same Act provides that:

"Every motor vehicle with a capacity of not more than ten (10) passengers, used as a public carrier in the transportation of passengers for pay, including those considered to be the working tool of the owner, shall, in addition to the fees hereinbefore prescribed, pay between July 1 and July 18 of each year, the sum of twenty-nine (29) dollars in special internal-revenue stamps with the words "Auto Público Asegurado" printed on them. Said annual sum of twenty-nine (29) dollars, or such part thereof corresponding to the fraction of a year, shall be covered into a special fund in the Treasury of Puerto Rico, at the disposal of the Commissioner, and shall be used by the latter to pay the premium on an insurance policy covering accidents caused by said vehicle to passengers traveling therein to the driver and to third persons, or any other additional risk which the insurance company may be willing to underwrite, and for that purpose the Commissioner shall pay for each insured vehicle said sum of twenty-nine (29) dollars to the State Insurance Fund or to the insurer who, at a public call for bids issued for that purpose by the Supply Commission of the Insular Government, shall offer the best conditions and receive the award, subject to the rules the said Supply Commission may establish for the purpose. . . . "

Pursuant to the foregoing provisions of law the Hartford Accident & Indemnity Co. issued an insurance policy on the vehicle above mentioned. The policy thus issued provides in its additional conditions applicable to the insurance of public vehicles not deemed a tool of work of their owners and known as "P" cars, the following:

"6. This policy shall cover only while the vehicles described herein are used as public conveyance for transportation of passengers for a charge in the public ways or streets of this Island and in accordance with the regulations of the Public Service Commission of Puerto Rico, including regulations as to routes."

Up to now this Court has decided three cases in connection with policies issued in favor of owners of vehicles engaged in the transportation of passengers for pay, in which liability has been demanded from the company in spite of the fact that the terms of the policy had been violated. The first was Rondón v. Aetna Casualty and Surety Co., 56 P.R.R. 418. In said case Juan Basabe, owner of a motor

bus engaged in the transportation of passengers for pay in the city of San Juan, obtained pursuant to the regulations of the Public Service Commission, an insurance policy to answer for any compensation awarded to any person injured as a result of an accident due to the carelessness of the public carrier or his employees, up to the sum of $3,000. The accident occurred and the insurer contended that it was not liable because at the time of the accident the vehicle was being driven by a person who lacked the age and the license required by law and that consequently, it was relieved from liability under the policy. It was held that a compulsory insurance was involved therein and that the company would answer for the damages in spite of the fact that the assured had violated the terms of the policy.

The second was *Hernández* v. *Rosario*, 66 P.R.R. 281. In this case there was involved a policy issued pursuant to Act No. 33 of April 14, 1941 (Sess. Laws, p. 548)[1], in favor of the owner of a public automobile, "P.A." which constituted his tool of work. The policy provided that it would not cover any accident which occurred while the automobile was being driven by a person other than the owner. Plaintiff's wife had an accident precisely at the time in which the insured vehicle was being driven by a person other than the owner and when the corresponding action for damages was brought the insurance company contended that it was not liable under the terms of the policy. This Court held, in an opinion delivered by Mr. Justice Snyder in which Messrs. Justices De Jesús and Córdova concurred, that there was not involved a compulsory insurance and that since the terms of the insurer's contract had been violated, the company was not liable. Mr. Chief Justice Travieso dissented and Mr. Justice Todd, Jr., concurred in the opinion delivered by him.

---

[1] ". . . *Provided, however,* That the automobile operated by its owner as a public carrier, if the owner personally drives it and he does not own, hold, or control other motor vehicles used in the transportation of passengers for pay, shall be considered his tool of work, and as such, shall not pay any fee, nor shall the owner thereof pay any fee for operating or driving said automobile."

Regarding that same matter, there was rendered on March 17, 1948 a *per curiam* decision in civil case No. 9592, entitled *Juan Serrano Delgado* v. *Carlos Rosa Sánchez* and *U. S. Casualty Co.* In that suit, which is the third one decided in connection with the matter by this Court, the question involved was whether the defendant Rosa Sánchez and the codefendant U. S. Casualty Co., as insurer, was liable for the damages caused to the plaintiff, when he was run over by the "PA" automobile owned by the former at the time it was being driven by a person other than the owner. The facts show that the automobile belonging to Rosa Sánchez had been stolen by Roberto Serrano; that the owner of the vehicle did not give his consent for Serrano to drive it and furthermore, that said automobile was not being operated, at the time of the accident, as public carrier for the benefit of its owner. It was held that under those circumstances the insurance company was not liable.

In the case at bar, however, neither the regulations of the Public Service nor Act No. 33 of 1941, to which we have already referred, are in controversy. We have already seen how both read. Section 10 (*a*), *supra*, as it has already been seen, provides that every motor vehicle with a capacity of not more than ten passengers used as a public carrier in the transportation of passengers for pay in addition to the fees prescribed in § 9 shall pay the sum of $29 and that said $29 shall be covered into a special fund and shall be used to pay the premium on an insurance policy covering accidents caused by said vehicle to passengers traveling therein, to the driver, and to third persons, or any other additional risk which the insurance company may be willing to underwrite. The payment of the additional $29 is compulsory for every owner of a motor vehicle of the indicated capacity which is engaged in the transportation of passengers for pay. There is no discretion whatever on his part. The payment of the $29 and the issuance of the policy do not depend on his will once he engages in the operation of

such business. Said Section does not provide that at the time of the accident the vehicle should be used as a public carrier. What it provides in an express manner is that if the vehicle is engaged in the transportation of passengers for pay his owner must necessarily pay, in addition to the fees prescribed by § 9, the sum of $29. Said sum, as we have already stated, shall be used to obtain an insurance policy for the purposes already mentioned and shall be mainly issued for the benefit of the above-mentioned persons and not for the benefit of the owner of the vehicle. It is the policy, which in one of its clauses provides that the insurer shall be liable only while the insured vehicle is used as public conveyance for transportation of passengers for pay. The insurance involved herein is undoubtedly of a compulsory character and in an insurance of this kind the terms of the policy can not go beyond the provisions of the Act pursuant to which the policy is issued, nor can be contrary to the same. The fact that at the time the accident occurred the automobile involved herein transported only the guests of the chauffeur, does not excuse the insurer from liability.

The judgment appealed from should be affirmed.

Mr. Justice De Jesús did not participate herein.

----

Mr. Justice Snyder, dissenting.

I dissent. First, even if the Act herein provided for compulsory insurance, I think the policy was in accord with the Act. The statute does not require a blanket policy, no matter how or when the vehicle is used. On the contrary, the statute provides only that coverage is required of "Every motor vehicle . . . used as a public carrier in the transportation of passengers for pay . . . ". Consequently, limitation of coverage in the policy herein to cases where the vehicle is used to transport passengers for pay was in accord and not in conflict with the statute.

The insurance company did not receive the larger premium which a blanket policy would require. Nor did it, for the comparatively modest premium it received, undertake to guarantee the integrity of public car owners by issuing a blanket policy covering all accidents, including those arising out of use of the cars by the owners on frolics of their own rather than in accordance with the Act. Without any justification therefor in the terms of the statute or the policy, the court has imposed a wide range of liability on the company which it did not assume in the contract and for which it has not been paid a premium.

I have never advocated blind adherence to the literal language of a statute, no matter what the consequences may be. "Construction, no doubt, is not a mechanical process and even when most scrupulously pursued by judges may not wholly escape some retrospective infusion so that the line between interpretation and substitution is sometimes thin. But there is a difference between reading what is and rewriting it. The Court here does not adhere to the text but deletes and reshapes it. Such literary freewheeling is hardly justified . . . " *Shapiro* v. *United States*, 335 U. S. 1, Mr. Justice Frankfurter, dissenting, p. 42.

The opinion gives the impression that it is following the rule laid down in compulsory insurance cases. But the majority opinion cites no cases except the *Rondón* case, which is wholly inapplicable. The cases which are directly in point and are not cited in the opinion are, I believe, virtually unanimous in support of my position rather than that of the court. Annotation, 141 A.L.R. 628; *American Casualty Co. of Reading, Pa.*, v. *Morris*, 51 F. Supp. 889 (W. Va., 1943); *Travelers Ins. Co.* v. *Caldwell*, 133 F. 2d 649 (C.C.A. 8th, 1943); *Duke Anderson Drilling Co.* v. *Smith*, 141 P. 2d 565 (Okla., 1943); *Hoar* v. *Gray*, 42 A. 2d 822 (Pa., 1945); *Sordelet* v. *Mercer*, 40 S.E. 2d 289 (Va., 1946); *Commercial Standard Ins. Co.* v. *Robertson*, 159 F. 2d 405, 408–10 (C.C.A. 6th, 1947), and cases there cited. Cf. *Savery* v.

*Kist,* 11 N.W. 2d 23 (Iowa, 1943); *Miller* v. *State Automobile Ins. Ass'n,* 21 N.W. 2d 621 (N.D., 1946).[1]

Second, I think the *Hernández* case still applies, despite the changes in the statute. Either the *Hernández* case or this case is wrong. I think the *Hernández* case was correctly decided. To me this case in effect overrules the *Hernández* case.

Third, *stare decisis* is not an inflexible rule. See *Pérez* v. *District Court, ante,* p. 4. But if *stare decisis* is to have any meaning at all, it surely applies here. Even if the *Hernández* case was wrong, we ought not to overrule it.

Fourth, if the *Hernández* case is now being overruled, it should at least be done prospectively. We should not impair the vested rights of the insurance company which entered into this insurance contract in reliance on the rule of law laid down in the *Hernández* case. As we pointed out in *Mayagüez Lt., P. & I. Co.* v. *Tax Court,* 65 P.R.R. 28, 33, "those who have obtained property or contract rights in reliance on a decision of a court of last resort may under certain circumstances be protected in those rights, despite the subsequent reversal of the decision in question. *A. Cuesta & Co.* v. *Treasurer,* 54 P.R.R. 82; *F. Olazábal & Cía.* v. *District Court,* 63 P.R.R. 891."

I would reverse the judgment of the district court and dismiss the complaint as to the insurance company.

---

[1] As the cases on which I rely indicate, driving to and from the points where passengers are picked up, and other trips necessarily incidental thereto such as driving to a garage for gasoline or repairs, are covered by the policy herein. But here the trip was in no way related to the function of passenger service and was therefore not covered by the Act or the policy.