46 N.J. Super. 482 (1957)
135 A.2d 28
MARYLAND CASUALTY COMPANY, A CORPORATION OF THE STATE OF MARYLAND, PLAINTIFF-APPELLANT,
v.
JOHN HEARN, JR., BY HIS FATHER AND GUARDIAN AD LITEM, JOHN HEARN; AND JOHN HEARN, IN HIS OWN RIGHT; ROBERT NASH; ANNA MAY LIPSCOMB AND WILLIAM J. KEYSER, TRADING AS PACKAGE FREIGHT EXPRESS; RONAN RENTAL CORPORATION, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA; AND EUREKA CASUALTY COMPANY, A CORPORATION OF THE COMMONWEALTH OF PENNSYLVANIA, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1957.
Decided October 10, 1957.
*483 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Sidney P. McCord, Jr., argued the cause for plaintiff-appellant (Messrs. Starr, Summerill & Davis, attorneys).
Mr. H. Hurlburt Tomlin argued the cause for defendants-respondents (Mr. Alex. P. Schuenemann, 3rd, attorney).
The opinion of the court was delivered by CONFORD, J.A.D.
The instant controversy concerns the construction of an exclusionary clause of an automobile liability insurance policy. It grows out of the following facts.
John Hearn, Jr., a minor, was injured when his bicycle was in collision with a truck owned by Ronan Rental Corporation ("Ronan," hereinafter) on August 18, 1953, in Camden, New Jersey. At the time the truck was being operated by Package Freight Express ("Package Freight," hereinafter) through its employee, Nash, under an agreement of lease from Ronan. Package Freight was insured for liability in respect to vehicles it rented under a non-ownership *484 automobile liability policy issued by plaintiff, Maryland Casualty Company ("Maryland," hereinafter). Ronan was insured by defendant Eureka Casualty Company ("Eureka," hereinafter) under a liability insurance policy which covered Package Freight as an additional insured under the common "omnibus clause." Another clause in that policy, hereinafter set forth in full, is the subject of this litigation.
Nash, Package Freight and Ronan were sued by Hearn for negligence and called upon both Maryland and Eureka to defend. Eureka refused. Maryland defended, there was a dismissal as to Ronan, and later a compromise judgment in favor of Hearn and against Nash and Package Freight for $10,000 was entered and paid by Maryland. In the meantime, Maryland instituted the present action for declaratory judgment, and, after the settlement with Hearn, this action devolved into one for reimbursement of Maryland, as subrogee of Package Freight, by Eureka. Only a single issue is argued upon this appeal. That is whether Eureka is absolved of liability as a result of the presence of the following clause in the policy it issued to Ronan:
"In consideration of the premium at which this policy is written, it is hereby understood and agreed that such coverage as is afforded under this policy does not cover as an insured any person, or organization, or any agent, employee or contractor thereof, other than the named insured, who is required to carry automobile liability insurance under any Motor Carrier Law."
The trial court held that the quoted provision precluded liability on the basis of the following stipulated facts. At the time of the accident, Package Freight was a partnership which held a certificate of public convenience issued by the Pennsylvania Public Utility Commission, authorizing transportation of property as a Class B motor carrier between points in the City and County of Philadelphia. The rules and regulations of that Commission prohibit the operation of motor carriers under its jurisdiction in intrastate commerce unless a certificate of insurance is filed evidencing *485 coverage for liability for negligent operation, maintenance or use of motor vehicles under a certificate issued by the Commission. As of the date of the accident, Maryland was listed with the Pennsylvania Public Utility Commission as Package Freight's insurer in compliance with the regulations. The policy issued by Maryland, moreover, bore separate indorsements purporting to comply, respectively, with section 215 of the federal Interstate Commerce Act and the rules and regulations of the Interstate Commerce Commission, and the provisions of the Pennsylvania Public Utility Law and the regulations of the Public Utility Commission of that Commonwealth, respecting liability coverage of the insured (Package Freight) as a motor carrier.
Plaintiff argues that the exclusionary clause in the Eureka policy is not applicable in respect of the claim it asserts in this case, because the accident involving the Hearn boy occurred while the truck was carrying freight from Philadelphia to Camden, an interstate journey outside the superintending jurisdiction of the Pennsylvania Public Utility Commission and not conducted pursuant to the certificate issued by that agency. It further contends that while the interstate carrier journey would ordinarily be within the jurisdiction of the Interstate Commerce Commission, that body has, pursuant to enabling legislation, 49 U.S.C.A., § 303(b)(8), adopted regulations exempting from the operation of the provisions of the federal act applicable to motor carriers a zone comprising the City of Philadelphia, Pennsylvania, and certain areas in New Jersey, including the corporate limits of Camden. 49 C.F.R. 170.6. Defendant Eureka objects to the references to the Interstate Commerce Regulations as not contained in the record made in the trial court. It may be noted that federal laws, and regulations adopted pursuant thereto, are required to be judicially noticed by the courts of this State. Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 260 (1949). But in the view we take of the mooted clause in the policy the effect of the Interstate Commerce Act and of the quoted regulation may be assumed to be as plaintiff represents.
*486 From what has been set forth, particularly the motor carrier indorsements on the Maryland policy, it is fair to infer that Package Freight's general motor carrier business includes some intrastate transportation in the Commonwealth of Pennsylvania pursuant to the certificate issued by the Pennsylvania Public Utility Commission and some interstate business conducted pursuant to certificate by the Interstate Commerce Commission. At the very least, it concededly holds a Pennsylvania certificate, and, therefore, is literally within the scope of the Eureka policy exclusion as an "organization * * * other than the named insured, who is required to carry automobile liability insurance under any motor carrier law." Plaintiff concedes this but argues that the clause must be taken as though it contained the additional qualification for exclusion that the carrier operation in the course of which the implicated accident occurred was one over which, in and of itself, no public utility agency had regulatory jurisdiction.
Since the policy was issued in Pennsylvania, it is subject to construction under the law of that jurisdiction. Neither party has been able to cite a controlling precedent of that or any other state. The closest case cited to us is Hoar v. Gray, 352 Pa. 373, 42 A.2d 822 (Sup. Ct. 1945), but we find it not dispositive of the question before us. That case involved the construction of the language of a motor carrier indorsement on a policy. The provision undertook to cover the negligent operation, etc., of motor vehicles "under certificate of public convenience or permit issued to the insured by the Pennsylvania Public Utility Commission * * *." The certificate of public convenience authorized only "hauling exclusively for" a named firm. The court held that the coverage of the policy did not extend to an accident in the course of the use of the vehicle for the personal purposes of its owner rather than for the purposes specified in the certificate, so as to nullify an exclusion in the policy as to passengers on the vehicle. In the case before us, however, we are not concerned with the scope of the coverage effected by the carrier indorsements in the *487 Maryland policy, and, indeed, Maryland has recognized its liability in respect of this accident by paying the Hearn claim. The question for solution is whether the exclusionary clause in the Eureka policy, which is drafted in terms of excepted assureds, is nevertheless to be read as though it were concerned with excepted uses (other than as might presumably be incident to operation by particular kinds of user organizations).
In construing a policy of insurance, as with any written contract, we seek the intention of the parties, not necessarily circumscribed by the literal language, but guided by the language toward a result which, while within its sense, is yet "natural, reasonable and practical." See Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599, 605 (App. Div. 1956). Such an approach satisfies us that the real intention reflected by the exclusionary clause before us lies in its literal import and that it was correctly construed by the trial court. It is entirely reasonable to suppose that in writing this exclusion the defendant company was thinking in terms of a class or type of vehicle operator it desired not to cover as an additional assured, regardless of whether the specific use of the vehicle by that operator at the time of a particular casualty was characteristic of his general uses of the vehicle. It may well have been its intention, while satisfied to cover the named insured in motor carrier operations, not to risk the casualties attendant upon use by others whose typical operations were as motor carriers and who could be conveniently classified for exclusion purposes as persons or organizations required to carry insurance under a motor carrier law. If this was the intent of the parties to the Eureka policy, it was aptly expressed by the language used.
Whether the exclusion would be operative if the vehicle was not being used in any kind of carrier operation we need not consider. But it seems fanciful to us that the parties to the policy would have intended so fine a distinction, for example, as that the exclusion would apply if the vehicle on the instant Philadelphia-Camden journey were destined *488 to continue on to Salem after the Camden stop (an interstate trip, within the jurisdiction of the Interstate Commerce Commission), but not where Camden is the terminus of the particular carrier operation. The same contrast would apply between an operation entirely within the City of Philadelphia, on the one hand, and one which started as an intended Philadelphia-Camden operation, with several scheduled stops in Camden, and an accident in Camden. Plaintiff's hypothesis would exclude liability in the first instance but not the second.
It may be of further significance that both of the motor carrier indorsements on the Maryland policy extend the liability under that policy to all losses "whether occurring on the route or in the territory authorized to be served by the insured or elsewhere." Whether this verbiage is required by regulations either of the Pennsylvania Commission or the Interstate Commerce Commission we are not advised. Its inclusion, however, indicates that the public is protected notwithstanding a construction of the Eureka policy contrary to plaintiff's contention.
We conclude that the construction of the exclusionary clause in the Eureka policy indicated by the literal import of the language is what was intended by the parties, and that Package Freight was excluded as an additional assured under the policy because required in fact to carry liability insurance under the laws of Pennsylvania, if not also under the laws of the United States.
Judgment affirmed.