LittletoN, Judge,
delivered the opinion of the court:
This is an action to recover $60,448.57, plus interest, as compensation for the use and occupancy of certain land by defendant during the period from April 13,1942, to December 31,1945. Plaintiff, a Massachusetts corporation, had at some time prior to April 13,1942, leased from the New York Central Railroad Co., hereinafter referred to as the railroad, two noncontiguous parcels of land in Allston, Massachusetts.[1] These parcels contained approximately 190,242 square feet of land, on which were located a number of buildings having a total area of 121,588 square feet, and platforms covering 11,340 square feet. The remainder of the area amounting to approximately 57,314 square feet consisted of open land.
Defendant, after some negotiations with plaintiff, through the Navy Department, began occupancy of the premises on April 13,1942. On July 9,1942, a lease dated April 13,1942, which had been prepared by defendant and executed by both parties, was forwarded to plaintiff. In it the premises were described as “Buildings at #99 and #241 Lincoln Street, Allston, Massachusetts, containing approximately 121,588 square feet of space”. Defendant used and occupied, during the period here involved, the buildings, platforms, and open areas, or the approximately 190,242 square feet above referred to.
Plaintiff contends in suit (1) that as the lease did not cover the open land and platforms used and occupied by defendant, *300 but referred only to Buildings .#99 and #241 containing approximately 121,588 square feet of space, there is an implied contract under which defendant is obligated to pay a reasonable rental for the additional space; or (2) that the use and occupancy of such space by defendant constituted a taking of private property for public use, for which plaintiff is entitled to just compensation under the Fifth Amendment. Defendant takes the position (1) that the lease is ambiguous, and parol evidence is admissible to clarify the ambiguity in the description of the property; (2) that the lease as thus clarified included all of the land used and occupied by defendant; and (3), in the alternative, that because of mutual mistake, the lease is subject to reformation to show the true intent of the parties.
The proof shows that in the early part of 1942, plaintiff had under lease from the New York Central Railroad Company two parcels of land in Allston, Mass., known as #99 and #241 Lincoln Street, respectively. The area known as #99 Lincoln Street consisted of a large building covering 47,267 square feet, a platform and ramp covering 6,340 square feet, and an open land area of approximately 45,000 square feet, which were used by plaintiff for automobile unloading and storage purposes.
Plaintiff’s lease to the second area, #241 Lincoln Street, covered only buildings and a loading platf orm, together with the right to use the railroad sidetracks adjoining the platform, and the right of ingress and egress for men and automobiles from the buildings and platforms to Lincoln Street.[2] Plaintiff at no time had any open land area under lease at this location.
On or about February 1,1942, defendant became interested in obtaining from plaintiff a sublease of the above properties. On March 13, 1942, plaintiff submitted a bid to the Supply Department, Navy Yard, Boston, covering the rental of the premises for the three-month period from April 1, 1942, until June 30,1942, the end of defendant’s fiscal year. Plain *301 tiff included in its bid a breakdown by area and rental price on all of the open land, platforms, and buildings which it then had under lease from the railroad, with the exception of the small First Aid Building. Also included in this breakdown was the Coca-Cola Building, which was not at that time leased to plaintiff.[3]
Defendant was limited, by the provisions of Section 322 of the Economy Act of June 30, 1932, 47 Stat. 382, 412, 40 U. S. C. § 278 (a), to the payment of rentals not to exceed 15 percent of the appraised fee value of the leased premises. An appraisal for the purpose of compliance with the statutory limitation fixed the fee value of the premises, including the land in question covered by plaintiff’s bid, at $158,000. The price quoted in the bid amounted to $9,550 for three months, or $38,200 per annum. The maximum rental' authorized by law for the premises appraised at $158,000 fee value was $5,925 for three months, or $23,700 per annum.
On March 30,1942, the Supply Officer of the Boston Navy Yard advised plaintiff by letter that its bid exceeded the 15 percent statutory restriction, and in view of that fact, it was necessary that condemnation proceedings be instituted. On April 1,1942, plaintiff’s president wrote the following letter to the Supply Officer:
On March 14th, 1942 we submitted a bid on Buildings at 99 Lincoln Street and 241 Lincoln Street, Allston, Massachusetts, for occupancy by the United States Navy to June 30, 1942 in the amount of $9,550.00.
We herewith submit a revised bid of $5,925.00 for the period ending June 30th, 1942 with the Understanding that the United States Navy will take care of all repairs to the buildings, Track and Platforms.
We can arrange immediate occupancy of the major part of the space.
On April 10,1942, plaintiff confirmed by letter a telephone conversation of the same date giving defendant authority to “occupy the premises at 99 and 241 Lincoln Street, Allston, Massachusetts, Monday, April 13,1942.” In this letter plaintiff indicated its understanding that a lease would be submitted at a later date, to be adjusted as of date of occupancy on the basis of plaintiff’s revised bid of April 1, 1942.
*302 On April 13, 1942, defendant went into possession of the premises at #99 Lincoln Street, and a few weeks later it went into possession of the buildings and platform at #241 Lincoln Street, with the exception of the First Aid Building, which was used by plaintiff as an office.
A draft of a lease dated April 13, 1942, was prepared by the Office of the Judge Advocate General of the Navy, sent to plaintiff for its execution, signed by plaintiff and returned to defendant for its execution, and on July 9,1942, the lease executed by both parties was forwarded to plaintiff. It covered a period from April 13,1942, to June 30,1943, with the right of renewal by defendant on thirty days’ notice, and provided for a rental price of $23,700 per annum. The premises were described in the lease as “Buildings at #99 and #241 Lincoln Street * * * containing approximately 121,588 square feet of space.”
The area mentioned in the lease, i. e., 121,588 square feet, included only the buildings on the two premises. It did not include any platforms or open land areas. As described in finding 10, defendant, beginning on April 13,1942, used and occupied the buildings, platforms, and open land areas, or a total area of approximately 190,242 square feet of space.
Plaintiff made no protest that the defendant was occupying more space than it was entitled to under the lease until October 14,1943, a year and a half after defendant first occupied the premises, when it wrote defendant as follows:
Under the terms of our lease (NO D — 2905) between the Sutcliffe Storage & Warehouse Co., Inc. and the United States of America, we lease approximately 121,588 square feet of space at #99 and #241 Lincoln St., Allston. We find that since the start of the U. S. Navy occupancy of this property that they are also occupying and using 68,204 square feet of land which is not covered in the above lease.
We feel that this matter should be given jmur prompt attention in order that we may execute a lease covering your past use and future use of this property.
Prior to the date of this letter, the lease between plaintiff and defendant had been renewed for the period from July 1, 1943, to June 30,1944, by notice dated May 15,1943. The description of the premises and the annual rental provided in the lease were not changed. Plaintiff accepted this renewal *303 without protest and with knowledge that defendant was then and had been occupying and using the entire 190,242 square feet of space. Shortly after June 1, 1944, plaintiff received a notice of renewal of lease from July 1, 1944, to June 30, 1945, in which the description of the leased premises had been changed to “Building and Land * * * containing approximately 190,242 square feet of space, said area being all of the land leased to the lessor by the New York Central Railroad * * Plaintiff’s president testified that this form of renewal was not acceptable to it. However, defendant continued to pay and plaintiff continued to accept, without protest, the rental price of $23,700 per annum.
In May of 1945, plaintiff received a notice of renewal of lease dated May 28,1945, stating:
the United States of America elects to renew the said lease, as the same may have been amended, for the period of one year from and after June 30, 1945, and by these presents does renew, extend, and adopt the said lease and all the terms and conditions thereof for the period beginning July 1,1945, and ending June 30,1946.
Plaintiff’s leases from the railroad were canceled by the railroad as of December 31, 1945, following which date defendant leased the premises which it had been occupying and using directly from the railroad.
As heretofore stated plaintiff seeks to recover the reasonable rental value of the land used and occupied by defendant which it claims was not included in the lease to defendant, either on the theory of implied contract or under the Fifth Amendment. The defense to these claims is that the lease is ambiguous; that parol evidence is admissible to clarify the ambiguity, and that the lease as thus clarified included all of the land used and occupied by defendant. Alternatively, defendant urges that the instrument would seem to be subject to reformation in the light of the evidence to show the true intent of the parties, on the ground of mutual mistake with reference to the original description in the lease of the leased premises.
We are of the opinion that the latter contention of the defendant is fully supported by the evidence of record. Without undue repetition of the facts heretofore stated, the proof is clear and convincing that plaintiff intended to lease *304 to defendant, and that defendant intended to lease from plaintiff, all the property plaintiff had under lease from the railroad at #99 and #241 Lincoln Street,[4] at an annual rental of $23,700. The proof is also clear and convincing that the failure of the lease as written, expressly and in detail', to reflect the true intent of the parties was the result of a mutual mistake. The area used and occupied by defendant, for which plaintiff was paid $23,700 per annum, was exactly what both parties to the lease had contemplated would be used and occupied by defendant under its lease and for the stated price.
Under such circumstances, this court may, in the exercise of its equitable jurisdiction and for the purpose of awarding or refusing to award a money judgment against the United States, reform the lease so as to express the understanding and intention of the parties to it. Cramp v. United States, 239 U. S. 221; Ackerlind v. United States, 240 U. S. 531; Iowa-Wisconsin Bridge Co. v. United States, 114 C. Cls. 464, 504; cert. den., 339 U. S. 982; Heid Brothers v. United States, 63 C. Cls. 392. “This court may exercise equity jurisdiction to the extent of reforming contracts and base its decree upon the contract as reformed.” Pocono Pines Assembly Hotels Co. v. United States, 73 C. Cls. 447, 482.
Plaintiff argues that the sole remedy of defendant, on its contention that the. lease as written did not state the true contract, is a Bill in Equity to reform the contract. We are of the opinion that there is no sound reason, where the ground for reformation is established by clear and convincing evidence, Ivinson v. Hutton, 98 U. S. 79; Adams v. Henderson, 168 U. S. 573; why reformation should not, in a suit in this court on the contract, be available to the Government as a defense. Metropolitan Casualty Ins. Co. v. Friedley, 79 F. Supp. 978; 5 Williston on Contracts, Rev. Ed., Sec. 1599; see also 66 A. L. R. 763. The granting by this court of such relief in proper cases, to either party, promotes substantial justice according to the merits of the case.
Plaintiff finally contends that defendant, by filing a general traverse to the petition in the instant case, has waived its right to assert the defense. There is no merit to this position. *305 If we assume, however, that the defense should have been specially pleaded, as plaintiff argues, failure to do so is immaterial where, as here, evidence of the defense was introduced and not objected to for failure to plead it, and no surprise is claimed. American Casualty Co. of Reading, Pa. v. Morris, 51 F. Supp. 889, affd. 146 F. 2d 208; Tillman v. National City Bank of New York, 118 F. 2d 631; cf. Metropolitan Casualty Ins. Co. v. Friedley, supra.
We hold, therefore, for the reasons expressed herein, that under the true terms of the lease agreement, as understood and intended by both parties, the defendant is not liable to plaintiff for additional rental for use of the premises in question or for the payment of just compensation for the taking of such premises.
The petition is therefore dismissed.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitakek, Judge; and JoNES, Chief Judge, concur.
FINDINGS OF FACT
The court makes findings of fact, based upon the evidence, the report of Commissioner William E. Hay, and the briefs and argument of counsel, as follows:
1. The plaintiff is a corporation organized and existing under the laws of the Commonwealth of Massachusetts, having its principal place of business in Boston, Massachusetts.
2. From sometime prior to April 13,1942, and until December 31, 1945, the plaintiff had under lease from the New York Central Railroad Company two noncontiguous parcels of land lying between Lincoln Street and the main line tracks of the Boston & Albany Railroad. These two parcels are shown for purposes of illustration by the drawings appearing on Appendix A herein.
From April 13,1942, to and including December 31, 1945, the defendant, through its Navy Department, was in rightful possession of certain buildings located on the said two parcels of land pursuant to lease entered into between the defendant and the plaintiff for the period from April 13, 1942, to and including June 30, 1943; one renewal of such lease for the period from July 1, 1943, to and including June 30, 1944; *306 and a holding-over from July 1, 1944, to and including December 31, 1945. The plaintiff claims herein a taking of use, or deprivation of the plaintiff’s use, by the defendant of certain land which the plaintiff says was leased to it by the railroad but not included in its lease to the defendant.
3. The first tract of land leased to the plaintiff by the New York Central Railroad was located at 99 Lincoln Street in that part of Boston known as Brighton, and had been first leased to the plaintiff by lease dated November 8, 1940. A substitute lease was entered into on February 18,1942. The land and buildings covered by this lease were indicated on a map attached thereto and were described in said lease as follows:
* * * a parcel of land containing about ninety-eight thousand five hundred eighty (98,580) square feet, together with the building and automobile platform thereon, on the southerly side of Lincoln Street in that part of the City of Boston, County of Suffolk and said Commonwealth known as Brighton; together with the right to use that portion of side track P3 and that portion of side track P5 and side track P4 located on the parcel herein demised, subject to the right of the lessor to use said side tracks for all railroad purposes; reserving to the lessor the right to maintain on the said parcel the poles and wires, substantially as at present constructed.
The demised premises being shown within the lines tinted green upon the blue print hereto annexed. * * *
The lease provided for a rental of $325 per month, or $3,900 per year, and ran for a term of one year from March 1, 1942, and after expiration of that term until terminated by either party upon thirty days’ notice. It further provided that no obstructions of any kind would be placed within ten feet from the center line of any track on the premises.
4. The leased premises at 99 Lincoln Street, consisting of 98,580 square feet, extended about 1,023 feet along Lincoln Street by 118 feet at the westerly end, narrowing down to 31 feet at the easterly end. The westerly portion of the tract was improved by a large building extending about 400 feet along Lincoln Street by the full width of the tract for 118 feet, covering an area of 47,267 square feet. To the easterly end of this building beyond a 28-foot driveway, a ramp 22 *307 feet in length, led to an automobile platform 295 feet in length. Both the ramp and platform were 20 feet wide. Railroad sidetracks ran on each side for the entire length of the automobile platform, leading into spurs at the easterly end of the tract. A further track, also tied into spurs, was located between these two tracks, terminating a few feet from the end of the platform. The large building had three doors at the easterly end, and the only access was provided at a gate on Lincoln Street at the end of the driveway. The total area at 99 Lincoln Street consisted of the large building covering 47,267 square feet, the platform and ramp covering 6,340 square feet, and disregarding the small cabin and office building, the balance of the land area was approximately 45,000 square feet. The land and buildings were used by the plaintiff for automobile unloading and storage purposes.
5. The second leased area, known as 241 Lincoln Street, was located approximately one-half mile east of the first tract. In the early months of 1942, it was under lease to the plaintiff by a lease dated October 1,1941, which contained a map depicting the premises described therein as follows:
* * * a parcel of land containing about five thousand (5,000) square feet, with the automobile unloading platform thereon, situated southerly of Lincoln Street in that part of the City of Boston, County of Suffolk and said Commonwealth known as Allston; together with the right to use that portion of sidetrack numbered 31 and that portion of sidetrack numbered 37 adjoining the parcel above described, subject to the right of the lessor to use said sidetracks for all railroad purposes; also another parcel of land containing about forty-eight thousand five hundred twenty-six (48,526) square feet, with the buildings thereon, southeasterly of the parcel above described; also another parcel of land containing about six thousand three hundred fifty-two (6,352) square feet on the southeasterly side of said Lincoln Street and northeasterly of the second parcel above described; also another parcel of land containing about eight thousand sixty (8,060) square feet, together with the building thereon, on the southerly side of said Lincoln Street and westerly of the parcel last above described; also another parcel of land containing about four hundred fifty (450) square feet, together with the building thereon, on the southerly side of said Lincoln Street and northerly of the parcel first above described; *308 together with a right of way for men and automobiles from the above described parcels to Lincoln Street over such other land of the lessor as said lessor may from time to time designate, to be used in common with the lessor and its successors, licensees and assigns.
The demised premises being shown within the lines tinted green upon the blueprint hereto annexed. * * *
This lease, as shown by the map above referred to, covered only buildings and the loading platform having-ramps at either end, together with the right to use the railroad sidetracks adjoining the platform and the right of ingress and egress for men and automobiles from the building and platform to Lincoln Street. It did not include the Coca-Cola Building, shown on Appendix A, which will be referred to in subsequent findings, nor did it include the two buildings, also shown on Appendix A, which are marked with cross-hatching. The railroad platform was separated from the westerly end of the largest building only by a sidetrack. This building, represented on Appendix A by Nos. 3, 4, 5 and 6, covered a total land area of approximately 48,526 square feet, consisting of various connected parts known as the Freight Car Shop No. 1 (No. 3), Wood Mill and Machine Shop (No. 4), Wheel Shop (No. 5), and the Coach Shop (No. 6). The remaining buildings were located northerly of the first main building and were separated from it by a narrow space through which ran spur tracks from the main line tracks. These additional buildings were known as the Old Lumber Shed (No. 7), the Blacksmith Shop (No. 8), and the First Aid Building (No. 9). The ramp oh the easterly end of the platform led directly into the end of the large building at No. 4.
The rental provided in the above-described lease was at the rate of $7,500 per annum, or $625 per month.
6. On or about February 1,1942, representatives of the defendant, acting through the Supply Officer, Boston Navy Yard, became interested in obtaining a sublease from the plaintiff of the property which it had leased from the railroad. As a result of negotiations with representatives of the plaintiff, a bid was submitted by the plaintiff on March 13, 1942, to the Supply Department, Navy Yard, Boston, signed on behalf of the plaintiff by Ellis Sutcliffe, its presi *309 dent, and witnessed by John A. Hope, a Boston real estate agent. The bid covered a three-month period from April 1,1942, to June 30,1942, as follows:
Rental of storage facilities for the balance of the fiscal year ending 30 June 1942, as follows:
UNIT #1 — 99 Lincoln St., All-ston, Mass.
Area of Bldg. 400 ft. x 120 ft. equals 48,000 Sq. Ft. at $0.25 per sq. ft. per annum_$3,000. 00
Area of Land 625 ft. x 80 ft. equals 50,000 Sq. Ft. at $0.10 per sq. ft. per annum- 1,250.00
Area of Platform 300 ft. x 20 ft. equals 6,000 Sq. Ft_ 100.00
Rent Total Unit #1 To June 30th 1942_ 4,350.00
UNIT #£ — 21j,l Lincoln St., All-ston, Mass.
Bldg. #2 200 ft. x 66 ft. equals 13,200 Sq. Ft.
Bldg. #3 199 ft. x 62 ft. equals 12,338 Sq. Ft.
Bldg. #4 200 ft. x 65.5 ft. equals 13,100 Sq. Ft.
Bldg. #5 74 ft. x 53 ft. equals 3,922 Sq. Ft.
Bldg. #6 259 ft. x 74 ft. equals 19,166 Sq. Ft.
Lumber Shed #7 (Wooden) 198 ft. x 32 ft. equals 6,352 Sq. Ft.
Bldg. #8 199 ft. x 40 ft. equals 8,060 sq. ft.
Total area of Buildings 76,138 Sq. Ft. at $0.25 per sq. ft. per an-num-$4,750. 00
Area of Land 13,000 Sq. Ft. at $0.10 per sq. ft. per annum_ 325.00
Area of Platform 5,000 sq. ft. at $0.10 per sq. ft. per annum_ 125.00
Total Rent Unit #2 to June 30th 1942_ 5,200.00
Total Rent Unit #1 & Unit #2 To June 30th 1942_$9, 550. 00
*310 The proposed rental is considered just and reasonable and no suitable space can be obtained at a lower rental.
The foregoing bid covered all of the land and buildings which the plaintiff then had under lease except the small First Aid Building (No. 9 at 241 Lincoln Street). It did not include the buildings shown with the cross-hatched markings at 241 Lincoln Street on Appendix A, but it did include the Coca-Cola Building (No. 2) which was not included in the plaintiff’s lease at this time.
7. Due to the provisions of the Act of June 30, 1932, 47 Stat. 412, 40 U. S. C. 278 (a), the defendant was limited by law to the payment of rentals not to exceed fifteen percent of the appraised value of the leased premises. This limitation was removed by the Act of April 28, 1942, 56 Stat. 247, 40 U. S. C. 278 (b). To comply with the provisions of the law in effect at the time of the consideration of the plaintiff’s bid, the defendant obtained an appraisal, hereinafter referred to as the Norris appraisal, which established the fee value of the premises including the land, platforms and so-called Coca-Cola Building at $158,000. The limitation of fifteen percent applied to this valuation amounted to a maximum rental authorized by law of $23,700 while the plaintiff’s bid of March 13, 1942, amounted to $9,550 for three months, or $38,200 per annum. At this time the plaintiff had the premises under lease from the railroad exclusive of the Coca-Cola Building for a total rental of $11,400 per year. On March 13, 1942, the plaintiff wrote the following letter to the Supply Department, U. S. Navy:
Six weeks ago the United States Navy visited our plant in anticipation of possible leasing of our property located at #99 and #241 Lincoln Street, Allston, Massachusetts. Since that time we have been in a most peculiar position not knowing exactly what to do.
We should like to know whether or not to make plans to vacate or continue doing business as usual, as we have an opportunity of storing wool on the above premises, and you can readily, understand that before we commit ourselves as to the storing of wool, we should like to know exactly what your position is in regard to same.
Through John A. Hope, Inc., we submitted to Lieutenant Commander Metcalf of the Supply Department *311 a schedule of the building and the terms on which we are willing to lease, as follows:
Unit .#1[5] 99 Lincoln Street, Allston
Bldg. #2_ 200' x 66' —13,200 sq. ft.
Bldg. #3_199'x 62' —12,338 sq. ft.
Bldg. #4_ 200'x 65.5' — 13,100 sq. ft.
Bldg. #5_ 74' x 53' — 3,922 sq. ft.
Bldg. #6_ 259' x 74' —19,165 sq. ft.
Lumber Shed #7 (Wooden)_198' x 32' — 6, 352 sq. ft.
Bldg. #8_199'x 40' — ■ 8,060 sq. ft.
Total area of Building 76,138 sq. ft. @ 250 per sq. ft_$19,000.00
Area of Land 13,000 sq. ft. @ 100 per sq. ft— 1,300. 00
Area of Platform 5,000 sq. ft. @ 100 per sq. ft_ 500.00
(Cost to build, $5,000.00.)
Annual Total Rent Unit #2-$20,800. 00
Bldg. #6 2d floor Approx. 10,000 sq. ft.
@ 15 [0] per sq. ft_ 1,500.00
$22,300.00
You can readily appreciate the importance of an immediate commitment if possible.
On March 30,1942, the Supply Officer of the Boston Navy Yard sent the following letter to the plaintiff:
With reference to occupancy by the Navy of the properties at 99 Lincoln Street and 241 Lincoln Street, Brighton, Mass., belonging to the Boston & Albany Railroad and leased by you, please be advised that your bid for rental is in excess of 15% per annum of the fair market value of the properties, as determined by Government appraisal.
In view of the statutory restriction against payment of an amount greater than 15% of the fair market value, it is necessary that condemnation proceedings be instituted.
It is essential that part of the premises be made immediately available to the Navy. Your assurance in writing is requested that such occupancy in advance of legal action will not in any way be construed to obligate the Government to pay rental higher than that which may be determined by the Court.
*312 Four days earlier, or on March 26, the Commandant, Boston Navy Yard, transmitted to the Chief of the Bureau of Yards and Docks of the Navy Department, Washington, copies of the appraisal (Norris appraisal) made by the Massachusetts State Appraiser for the Home Owners’ Loan Corporation of the properties at 99 Lincoln Street and 241 Lincoln Street, together with copy of the letter of March 18 from the plaintiff to the Navy Department set forth above, as well as the plaintiff’s bid set forth in finding 6, together with maps of each area. The letter of transmittal stated that the Commandant desired to lease the properties and improvements for urgently needed storage space and facilities required by the Supply Department of the Navy Yard, but that based upon fifteen percent of the HOLC appraisal, the maximum rental within the legal limitation would be $23,700 per annum and that the bids by the plaintiff were considered grossly excessive. The letter further recommended that immediate steps be taken to obtain these properties for the use of the Navy by condemnation.
8. On April 1,1942, Ellis Sutcliffe, president of the plaintiff, wrote to the Supply Officer of the Navy Yard as follows:
On March 14th, 1942 we submitted a bid on Buildings at 99 Lincoln Street and 241 Lincoln Street, Allston, Massachusetts, for occupancy by the United States Navy to June 30,1942 in the amount of $9,550.00.
We herewith submit a revised bid of $5,925.00 for the period ending June 30th, 1942 with the Understanding that the United States Navy will take care of all repairs to the buildings, Track and Platforms.
We can arrange immediate occupancy of the major part of the space.
9. On April 10, 1942, the plaintiff, by its president, wrote the following letter to the Supply Officer of the Navy Yard:
Confirming our telephone conversation this morning, we hereby give you authority to occupy the premises at 99 and 241 Lincoln Street, Allston, Massachusetts, Monday April 13,1942.
It is understood the lease will be submitted at a later date and be adjusted as of date of occupancy on the basis as submitted in our letter of revised bid of April 1,1942.
10. On April 13, 1942, the defendant went into possession of the premises at 99 Lincoln Street, and a few weeks later *313 it went into possession of the buildings and platform at 241 Lincoln Street, with the exception of three buildings at 241 Lincoln Street: the First Aid Building which was used by the plaintiff as an office, shown as No. 9 with diagonal lines on Appendix A; and the two buildings shown thereon with cross-hatching, the use of which was retained by the railroad. As of April 13, 1942, there were no automobiles occupying any of the open spaces. Automobiles were stored in some of the buildings at 241 Lincoln Street, and thereafter the plaintiff removed them a few at a time over a period extending into June 1942. The defendant used the platform at 99 Lincoln Street as well as the platform at 241 Lincoln Street to unload material for storage. The defendant made some use of the outside areas, particularly at 99 Lincoln Street. The defendant made substantial repairs to the platform at 99 Lincoln Street, strengthening it so that heavy materials could be unloaded from freight cars by means of mechanical loaders.
11. The plaintiff contends that between the time it received the defendant’s letter of March 30, quoted above in finding 7, and it sent its revised bid of April 1, quoted above in finding 8, an oral agreement had been made between the president of the plaintiff and the Supply Officer of the Navy Yard that the revised bid was to include only the buildings and was not to include the platforms or any open land areas. The Supply Officer denied having any conversation with Ellis Sutcliffe, president of the plaintiff company, in which the plaintiff said it was reserving to the plaintiff the use of the open areas and the platforms. It is found that no such oral agreement was reached.
12. By letter dated May 6,1942, the Assistant to the Paymaster General in Washington, D. C., requested the Judge Advocate General to prepare a lease. Enclosure “A” with this letter was a formal certificate which the Navy Department was requested to transmit to the Federal Works Agency, Public Buildings Administration, Office of Supply and Space Control, to obtain approval of that Agency for the rental of buildings. On this certificate only the buildings to be leased were mentioned and only the total area of the buildings, 121,588 square feet, was set out. Enclosure *314 “B” with this letter was the original Sutcliffe bid of March 13.1942, set out in finding 6 above. The request for preparation of the lease specified that the description of the property was to be taken from the latter enclosure.
13. Thereafter a draft of lease dated April 13, 1942, was prepared by the Office of the Judge Advocate General of the Navy and sent to the plaintiff by the Commandant of the Boston Navy Yard on June 9 for execution by the plaintiff. The lease was signed by the plaintiff and returned for execution by the Judge Advocate General. On July 9, 1942, the lease executed by both parties was forwarded to the plaintiff. At this time the defendant was in possession of the buildings, open areas and the loading platforms. A security patrol had been placed over the premises at 99 Lincoln Street on April 13, 1942, and a guard maintained from that time on. A security patrol had also been placed over the premises at 241 Lincoln Street a few weeks later. Railroad employees retained full access to the enclosed railroad property.
14. The lease executed by the parties in June 1942 was dated as of April 13,1942, the date plaintiff had authorized the defendant by letter to go into possession. The lease was for the period beginning April 13, 1942, and ending June
30.1943, with the right of renewal by the defendant on thirty days’ notice. The consideration for the rental was $23,700 per annum, payable monthly. The premises were described as
Buildings at #99 and #241 Lincoln Street, Allston, Massachusetts, containing approximately 121,588 square feet of space, * * *
No map or plat was attached to the lease.
Paragraphs 9,12, and 13 read as follows:
9. The Lessor shall, unless herein specified to the contrary, maintain the said premises in good repair and tenantable condition during the continuance of this lease, except in case of damage arising from the act or the negligence of the Government’s agents or employees. For the purpose of so maintaining the premises, the Lessor reserves the right at reasonable times to enter and inspect the premises and to make any necessary repairs thereto, except as set forth in paragraph 12.
*315 12. The Lessee shall make all repairs to the tracks, platforms and buildings both internal and external, at their own expense.
13. The Eailroad’s electrician employees in charge shall have the right of access to the demised premises for the purpose of inspection and maintenance of the railroad’s electric lines and equipment.
The words “except as set forth in paragraph 12” at the end of Paragraph 9, as well as the entire Paragraphs 12 and 13, were added in typewriting to the printed form.
15. The plaintiff did not protest to the defendant or its representatives that the United States was occupying more space than it was entitled to under the lease until October 14, 1943, when it sent the following letter to the Supply Officer of the Navy Yard:
Under the terms of our lease (N O D — 2905) between the Sutcliffe Storage & Warehouse Co., Inc. and the United States of America, we lease approximately 121,588 square feet of space at #99 and #241 Lincoln St., Allston. We find that since the start of the U. S. Navy occupancy of this property that they are also occupying and using 68,204 square feet of land which is not covered in the above lease.
We feel that this matter should be given your prompt attention in order that we may execute a lease covering your past use and future use of this property.
Additional protests were made after that date but representatives of the defendant consistently took the position that the description in the lease did not accurately reflect the agreement of the parties, and that the lease and the agreed rentals related to all of the property being occupied by the United States, i. e., the platforms, outside areas and the Coca-Cola building as well as the remaining buildings. The defendant has at all times claimed the right to be in possession and use of the entire area in dispute under the terms of the lease. After protesting as described above in October 1943, the plaintiff continued to accept rentals under the lease and all rentals due thereunder have been paid.
16. Although the plaintiff’s lease from the railroad on the premises at 99 Lincoln Street described in finding 3 would not have expired until March 1, 1943, it entered into a new lease with the railroad on July 1, 1942. This new lease was *316 identical with the one it replaced except that the rental was raised from $325.00 per month, or $3,900.00 per year, to $416.67 per month, or a total of $5,000.00 per year, and a clause was added that the lessee would maintain all tracks, platforms and buildings on the premises. The second lease on this tract was replaced by a third lease between the plaintiff and the railroad dated July 1, 1943. This lease was identical with its predecessor except that the rent was raised to $541.67 per month or $6,500.00 per year. In particular the land and platforms which the plaintiff contends were being wrongfully occupied by the defendant were not excluded from the renewal leases. The last lease continued in operation until December 31, 1945, prior to which time it had been cancelled by the railroad company under its reserved thirty-day cancellation right.
17. The plaintiff’s lease of October 1, 1941, with the railroad, covering the premises at 241 Lincoln Street, ran for a basic term ending October 31, 1942. However, on July 1, 1942, after the United States had entered into possession of the buildings and loading platform, together with the Coca-Cola Building, the plaintiff entered into a new lease with the railroad. This lease differed from the lease it replaced in the following respects:
(a) It included the so-called Coca-Cola Building (No. 2) described as “another parcel of land containing about thirteen thousand two hundred (13,200) square feet, with the building thereon.”
(b) In the earlier lease of October 1,1941, the large main building (comprising buildings Nos. 3, 4, 5 and 6), the adjoining platform and the right to use the tracks adjoining the platform were described as follows:
* * * a parcel of land containing about five thousand (5,000) square feet, with the automobile unloading platform thereon, situated southerly of Lincoln Street in that part of the City of Boston, County of Suffolk and said Commonwealth known as Allston; together with the right to use that portion of sidetrack numbered 31 and that portion of sidetrack numbered 37 adjoining the parcel above described, subject to the right of the lessor to use said sidetracks for all railroad purposes; also another parcel of land containing about forty-eight thousand five hundred twenty-six (48,526) *317 square feet, with the buildings thereon, southeasterly of the parcel above described; * * *
In the replacement lease of July 1,1942, the large building, the platform, and the sidetracks adjacent to the platform were all included in the following description:
* * * a parcel of land containing about sixty-three thousand six hundred (63,600) square feet, with the platform and buildings thereon, situated southerly of Lincoln Street in that part of the City of Boston, County of Suffolk and said Commonwealth known as Allston; * * *
The effect of this change was to include the land area underneath the tracks adjoining the platform consisting of 10,074 square feet in a specific parcel under lease in lieu of the previously existing right to use the tracks adjoining the platform.
(c) The rent on the premises which now included the Coca-Cola building (No. 2) was increased from $7,500.00 per year or $625.00 per month to $10,000.00 a year or $833.33 per month.
(d) The lessee was given the right to remove structures built by it during the term of the lease.
(e) The lessee agreed to maintain all tracks, platforms and buildings on the premises.
(f) The lessee agreed to pay $60.00 per annum for heat furnished to the small office (450 square feet).
(g) The lessor reserved the right to inspect its steam, air, and water lines on the premises.
The lease in all other respects remained the same, including the inhibition against placing any obstacle within ten feet of the center line of all sidetracks. Plaintiff, at no time, had any open land area under lease at 241 Lincoln Street. Outside of the buildings, it had only the platform and the tracks adjacent thereto.
18. On July 1,1943, a new lease was entered into between the plaintiff and the railroad covering the premises at 241 Lincoln Street. This lease was identical with its predecessor of July 1,1942, except that the rent was raised to $13,500.00 per year or $1,125.00 per month. This last lease continued in operation until December 31,1945, when it was cancelled *318 as of that date by the railroad under the thirty-day cancellation clause.
19. The lease between the plaintiff and the defendant was renewed by the defendant for the period from July 1, 1943, to June 30, 1944, by notice dated May 15, 1943.
Shortly after June 1, 1944, the plaintiff received the following notice of renewal of lease between the plaintiff and the defendant executed on behalf of the defendant by direction of the Chief of the Bureau of Yards and Docks, acting under direction of the Secretary of the Navy:
This is to notify the above-named lessor that under the provisions of paragraph 5 of Lease No. NOd-2905, dated April 13,194 , [sic] between Sutcliffe Storage & Warehouse Company, Inc. and the United States of America for premises, viz:
(See Modification Agreement)
Building and land at 99 and 241 Lincoln Street, Allston, Mass., containing approximately 190,242 square feet of space, said area being all of the land leased to the Lessor by the New York Central Railroad under two certain leases each dated July 1,1943.
Storage of materials and equipment by the Navy Yard, Boston, Mass.
Rental: $23,700.00 per annum
the United States of America this 31st day of May, 1944, elects to renew the said Lease for the period of one year from and after June 30, 1944, and by these presents does renew, extend, and adopt the said lease and all the terms and conditions thereof for the period beginning July 1, 1944, and ending June 30, 1945.'
The lessor is requested to acknowledge receipt hereof. The Modification Agreement referred to above was not introduced into evidence by either party. The plaintiff’s president testified that the above form of renewal was not acceptable. However, rentals thereunder continued to be paid by the defendant and accepted by the plaintiff.
Shortly after May 28,1945, the plaintiff received a notice of Renewal of Lease bearing that date, stating:
íjí íJí ijs
the United States of America elects to renew the said lease, as the same may have been amended, for the period of one year from and after June 30, 1945, and by these presents does renew, extend, and adopt the said lease and *319 all the terms and conditions thereof for the period beginning July 1, 1945, and ending June 30, 1946.
* * * * *
20. When the railroad company terminated its lease with the plaintiff as of December 31, 1945, the defendant, being still in possession, entered into a lease directly with the railroad company for a period running from January 1,1946, to June 30, 1946. This lease contained the following description:
Buildings and land at #99 and #241 Lincoln Street, Allston, Massachusetts, containing approximately 190,242 square feet of space
The agreed rental was the sum of $23,700.00 per annum or the same amount set out in the lease between the plaintiff and the defendant. In all other respects the lease agreement was similar except that under paragraph 14 thereof the defendant was given the right to cancel on thirty days’ notice.
21. On July 1, 1943, the United States had entered into a direct lease with the railroad company covering some additional space at 241 Lincoln Street, including the open space between the main building (Nos. 3, 4, 5 and 6) and the Coca-Cola building (No. 2).
22. At the time of the execution of the lease between the plaintiff and the defendant, it was the intention of the plaintiff to lease all the property it had under lease from the railroad at 99 Lincoln Street and all the property it had under lease at 241 Lincoln Street except the small First Aid Building used by the plaintiff as an office. Similarly, it was the intention of the defendant to lease from the plaintiff all the property at both 99 and 241 Lincoln Street except the small First Aid Building at 241 Lincoln Street which the plaintiff had leased from the railroad. The plaintiff’s claim for additional rental appears to be based upon the discovery by the plaintiff’s president, about a year and one-half after the defendant went into possession, of the discrepancy between the total area contained in the plaintiff’s lease to the defendant, 121,588 square feet, and the total area leased to the plaintiff by the railroad, approximately 190,242 square feet. Accordingly, it is found that the use of the figure in the lease by the plaintiff to the defendant of 121,588 square *320 feet was the result of a mistake by both parties at the time of the execution of the lease.
23. The reasonable value of the use and occupation of the open land at 99 Lincoln Street was $0.05 per square foot per year. The reasonable value of the use and occupation of the platform area at 99 Lincoln Street consisting of 6,340 square feet was $0.10 per square foot per year. The reasonable value of the use and occupation of the platform at 241 Lincoln Street consisting of 5,000 square feet was $0.10 per square foot per year. The only open land, i. e., land not covered by a building or platform at 241 Lincoln Street that the plaintiff at any time had under lease, was an area under the tracks adjoining the platform. There is no evidence that this track area would have a value apart from the platform. The value of its use is reflected in the value attributed to the platform.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes that as a matter of law the plaintiff is not entitled to recover, and the petition is therefore dismissed.
Judgment is rendered against the plaintiff for the cost of printing the record herein, the amount thereof to be entered by the clerk and collected by him according to law.

 In the City of Boston. The premises are sometimes said to be located in Brighton, Mass. See finding 3.

 The lease from the railroad to plaintiff covering the premises at #241 Lincoln Street in effect on April 13, 1942, ran until October 31, 1942. Its provisions are set out in finding 5. On July 1, 1942, plaintiff and the railroad executed a new lease which differed from the old one in the respects listed in finding 17. Insofar as here pertinent, the only change was to include in plaintiff’s lease the so-called Coca-Cola Building, referred to hereafter.

 The lease referred to in note 2, supra, from the railroad to plaintiff, included this building.

 Except the First Aid Building, at #241 Lincoln Street.

 Cf. Plaintiff’s bid quoted in finding 6.